FILED
 2010 Jan-04 PM 04:26
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DUNCAN-WILLIAMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case Number: 7:09-CV-0094-SLB |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion to Dismiss, (doc. 3),[1] and its Motion to Dismiss Amended Complaint, (doc. 10). Because defendant relies upon evidence outside the record, the court converted its Motions to Dismiss to Motions for Summary Judgment. (Docs. 5, 11.) Plaintiff Duncan-Williams, Inc., has sued defendant U.S. Bank National Association, claiming defendant is obligated to indemnify plaintiff and/or pay contribution for amounts paid in settlement of two underlying cases. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss/Motion for Summary Judgment, (doc. 3), is due to be denied as moot and that its Motion to Dismiss Amended Complaint/Motion for Summary Judgment, (doc. 10), is due to be granted.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. **SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193

F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II. STATEMENT OF FACTS

According to the Amended Complaint, on April 20, 2000, the Capstone Improvement District ("the District"), an instrumentality of the State of Alabama, issued $13 million in bonds ("the Capstone Bonds") for "the purpose of funding the construction of a 544 lot residential subdivision in Brookwood, Alabama, by Capstone Development, LLC ("the Developer")." (Doc. 7 ¶ 8.) "The Developer agreed to build and market a residential development in Tuscaloosa County, Alabama, in two phases adjacent to a championship golf course, with the first phase to be funded with the bonds proceeds . . . ." (*Id*. ¶ 10.)   U.S. Bank was the "Indenture Trustee" for the Capstone Bonds. (*Id*. ¶ 3.) Duncan-Williams was one of two underwriters of the Capstone Bonds. (*Id*. ¶ 13.) It "purchased one-half of the Bonds from the District," and resold them to its customers. (*Id*. ¶¶ 14, 15.) It sold its Capstone Bonds to Ruskin Vest and Industrial Products, Inc., both domiciled in Tennessee, and to Teri Jones, a Florida resident. (*See id*. ¶¶ 6, 21.) .

"[Duncan-Williams], using the Official Statement supplied to it by the District, sold a total of $595,000 series A Capstone Bonds to Ruskin Vest and total of $145,000 in Series A Capstone Bonds to Industrial Products." (*Id*. ¶ 21.) The Amended Complaint does not state the amount of bonds sold to Jones.

The Amended Complaint alleges:

> 23. After the Capstone Bonds were sold and the Capstone Development was funded, Eugene Borgosz, acting through Selective Services, began construction on the Development and from time to time requested reimbursement from the Bond proceeds for construction expenses from the Trustee.
>
> 24. In mid-2001, construction on Capstone Development began to experience cost overruns.
>
> 25. These costs overruns were the result of poor management, negligence, and/or mistakes made by Selective Services, Eugene Borgosz and/or Harrison Engineering.
>
> 26. Selective Services and Eugene Borgosz eventually walked off the job and refused to complete construction of the Capstone Development.
>
> 27. Triangle Management failed to oversee and manage the construction of the Development to a successful conclusion, after being compensated to do so with bond proceeds.

(*Id.* ¶¶ 23-27.)

The Amended Complaint also alleges:

> 31. Because the Capstone Development was never completed and very few lots were sold, there were no funds to make interest payments on the Capstone Bonds to the Capstone Bondholders after the capitalized interest fund was depleted. Further, the value of the security for the Bonds never materialized as represented by the District and the Developer in the Official Statement due to the failure of the District to complete the project.
>
> 32. After the Developer and Selective refused to complete construction of the Capstone Development and after the capitalized interest fund was depleted, the Capstone Bonds defaulted in August of 2003.

(*Id.* ¶¶ 31-32.)

Ruskin Vest and Industrial Products [hereinafter IP] filed an action against Duncan-Williams in the Circuit Court of Maury County, Tennessee. (Doc. 1, Ex. 1.)

4

Regarding the Capstone Bonds, Vest and IP alleged that Mark Warren, a broker employed by Duncan-Williams, had told Vest that "[Duncan-Williams] had never underwritten a bond issue that went under, and that [it] would never let this one fail." (*Id*. ¶ 19.) Also they alleged that "[i]t was negligent, reckless, and fraudulent for Duncan-Williams to have recommended the Capstone bond issue to [Vest and IP]. As Duncan-Williams knew or should have known, the Capstone project was enormously risky and flawed from the outset." (*Id*. ¶ 11.) "[W]hen Duncan-Williams persuaded [Vest and IP] to buy Capstone bonds in the summer and fall of 2000 and in 2001, [Duncan-Williams] knew that the project was not on track and that it was an enormously risky investment." (*Id*. ¶ 13.) They contended that Duncan-Williams's representative repeatedly told Vest that his Capstone bonds were "fine." (*Id*. ¶ 15-17.) After the default, Warren told Vest that Duncan-Williams underwriting had been inadequate and that Duncan-Williams had sold Vest "a bad issue." (*Id*. ¶ 19.)

On January 2, 2008, the Vest action went to trial. (Doc. 7 ¶ 49.) The jury reached a verdict in favor of Vest and IP and against Duncan-Williams. According to the Special Verdict Form, the jury found, *inter alia*:

    1.    Duncan-Williams intentionally or recklessly, and negligently made misrepresentations or omitted to state material facts in connection with the offer or sale of the Capstone Bonds to Vest and IP. (*See* doc. 3, Ex. 1 ¶¶ 1, 7, 10.)

    2.    Duncan-Williams did not exercise reasonable care while investigating the Capstone Project. (*See id*. ¶ 4.)

   3.     Duncan-Williams breached a duty of care owed to Vest and IP. (*See id.* ¶ 13.)

   4.     Duncan-Williams was 90% at fault, Vest was 10% at fault, and U.S. Bank was not at fault in causing Vest and IP's losses. (*See id.* ¶¶ 18, 21, 23, 24.)

   5.     Vest's damages were $470,050 and IP's damages were $114,550, for a total loss of $584,600. (*See id.* ¶ 6.)

Before a judgment was entered on the jury verdict, the parties settled this matter for $1.2 million. According to Duncan-Williams's Amended Complaint,

> Prior to the entry of a judgment on the jury verdict form, [Vest and IP] approached [Duncan-Williams] and offered to settle the case, because they believed there were "substantial appeal issues." Despite the posture of the case being in their favor, [Vest and IP] wanted to avoid additional costs, delays and uncertainties of an appeal. The parties then announced to the trial judge that they had agreed to settle the case and specifically approved an order that provided for a judgment in an agreed amount above that contained in the jury verdict form and expressly requested that the order not reflect that a judgment was being entered "on the verdict of the jury."

(Doc. 7 ¶ 51 [footnote added].)

The Judgment and Order entered in the *Vest* case states:

> This case came to be heard before a jury duly impaneled commencing on the 2nd day of January, 2008, and concluding on the 16th day of January, 2008. After due deliberation and receiving all evidence and arguments of counsel, Judgment is rendered in favor of the Plaintiffs and against the Defendant in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) which amount is inclusive of all discretionary costs and attorney's fees.
>
>    IT IS THUS ORDERED, ADJUDGED AND DECREED:
>
> That Judgment is rendered in favor of the Plaintiffs and against the Defendant in the amount of One Million Two Hundred Thousand Dollars

($1,200,000.00). This amount is inclusive of all discretionary costs and attorney's fees. Court costs shall be assessed against the Defendant.

(Doc. 3, Ex. 2.)

Teri Jones, on behalf of two Florida trusts, filed suit in Tuscaloosa County, Alabama against Duncan-Williams and U.S. Bank. (Doc. 7 ¶ 6; doc. 13 at 21.) Jones alleged "fraud by participants in the Capstone Bond Issue." (Doc. 7 ¶ 6.) Duncan-Williams paid Jones $150,000 to settle her claims against it. (*Id*. ¶¶ 6, 99.)

On January 16, 2009, Duncan-Williams filed this action against U.S. Bank alleging that U.S. Bank was liable for the amounts Duncan-Williams had paid in settlement of the *Vest* action. (*See generally* doc. 1.) It later amended its complaint to add a claim for the amount paid in settlement of the *Jones* action. (*See generally* doc. 7.) It contends that U.S. Bank ""must indemnify [it] for [its] losses based on either (1) its express agreement to do so; (2) an implied right of indemnity that arose from legal relationship between [Duncan-Williams] and [U.S. Bank]; or (3) Tennessee's common law of indemnity." (Doc. 7 ¶ 58.) It also alleges that it "is entitled to contribution pursuant to Tennessee Code Annotated §§ 29-11-101 et seq," and the Uniform Contribution Among Tortfeasors Act. (*Id*. ¶ 100 and at 24.)

### III.  DISCUSSION

**A.  MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT (Doc. 3.)**

After U.S. Bank filed its Motion to Dismiss, (doc. 3), Duncan-Williams filed an Amended Complaint for Contribution and Indemnity, (doc. 7). This Amended Complaint

supplants the original complaint; therefore, U.S. Bank's Motion to Dismiss/Motion for Summary Judgment as to the original Complaint is moot.  *See DeSisto College, Inc. v. Line*, 888 F.2d 755, 757-58 (11th Cir. 1989); *Siebert v. Allen*, No. 2:07-cv-295-MEF, 2007 WL 2903009, *4 (M.D. Ala. Oct. 3, 2007).

Defendant's Motion to Dismiss/Motion for Summary Judgment, (doc. 3), will be denied as moot.

## B.  MOTION TO DISMISS AMENDED COMPLAINT/MOTION FOR SUMMARY JUDGMENT  (Doc. 10.)

### 1.  Choice of Law

The parties dispute the proper source of law for resolution of plaintiff's claims.  "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  *Rando v. Government Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009)(quoting *McGow v. McCurry*, 412 F.3d 1207, 1217 (11th Cir. 2005)).  Therefore, this court will apply the choice of law rules of Alabama.

> Alabama law follows the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti.  See Liberty Mut. Ins. Co. v. Wheelwright*, 851 So. 2d 466 (Ala. 2002).  Under the principles of *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made.  *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502 (Ala. 1991). Under the principle of *lex loci delicti*, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.  *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819 (Ala. 1991).

*Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.*, No. 1060776, 2009 WL 280457, *12 (Ala. Feb. 6, 2009).

### 2. Indemnity

Duncan-William alleges that U.S. Bank "must indemnify [it] for [its] losses based on either (1) its express agreement to do so; (2) an implied right of indemnify that arose from [the] legal relationship between and among [plaintiff], the [d]efendant and the Vest Plaintiffs; or (3) Tennessee's common law of indemnity." (Doc. 7 ¶ 58.) The court finds that Duncan-Williams is not entitled to indemnity from U.S. Bank.

#### a. Express Agreement

Duncan-Williams concedes, "In this case there is no express agreement to indemnify." (Doc. 13 at 14.) U.S. Bank is entitled to judgment as a matter of law on Duncan-Williams's indemnity claim based on an express agreement.

#### b. Implied Right of Indemnity

Duncan-Williams contends, "A statutory right of indemnity and a common law implied right of indemnity arose in favor of Plaintiff against [Defendant] due to the legal relationship between Plaintiff and Defendant and because fairness demands as result of Plaintiff's payment of a settlement for the fault of [Defendant]." (Doc. 13 at 13 [citing doc. 7 ¶ 43].) Duncan-Williams argues:

> . . . Duncan Williams as the initial purchaser of the bonds relied on the covenants and agreements of the Trustee in the Trust Indenture in making its decision to purchase the bonds. As the initial link in the chain of distribution of the bonds, Duncan Williams, also relied on the contractual undertakings of the Trustee and other obligated persons made to it, as the initial owner of the bonds, in reselling the bonds to its customers. The Bond itself contained the representation of the Trustee that it would perform the duties under the Trust Indenture. [(Doc. 7, Ex. 3, exs. A, B.)] In reliance on its agreements with the

9

> Trustee, Duncan Williams sold its right to enforce the Trustee's covenants and agreements to the Vest Plaintiffs. ***It is the Indenture which provides that basis for implication of a right of indemnity in favor of Duncan Williams.*** Duncan Williams sold its rights to the Vest Plaintiffs, who in turn were injured by the negligence or fault of U.S. Bank.

(Doc. 13 at 14-15 [emphasis added].) The Indenture agreement states, "This indenture shall be governed in all respects including validity, interpretation and effect by, and shall be enforceable in accordance with, the laws of the State." (Doc. 1, Ex. 3 § 11.07.) "The State" is defined as "Alabama." Therefore, this court finds the issue of whether the Indenture created an implied right to indemnity between the parties is governed by Alabama law.

Alabama law provides that, by settling the underlying cases without proper notice to U.S. Bank that it intended to seek indemnity, Duncan-Williams waived any claim for indemnity based on an implied right. *See Ex parte Jones, Morrison, Womack & Dearing*, 939 So. 2d 912, 915-18 (Ala. 2006)(discussing, generally, *Allstate Ins. Co. v. Amerisure Ins. Companies*, 603 So. 2d 961, 965 (Ala. 1992)(citing, *inter alia*, *Lumbermens Mut. Cas. Co. v. Foremost Ins. Co.*, 425 So. 2d 1158, 1159-60 (Fla. Dist. Ct. App. 1983)). Nothing in the record before the court indicates that Duncan-Williams, prior to settling the underlying claims, notified U.S. Bank of its claim for indemnity.

Therefore, defendant is entitled to judgment as a matter of law as to plaintiff's claim based on an implied indemnity agreement; therefore, its Motion to Dismiss Amended Complaint/Motion for Summary Judgment is due to be granted and plaintiff's claim of implied indemnity is due to be dismissed.

Even if the court were to assume that Duncan-Williams's settlement did not bar its claim of implied indemnity based on the legal relationship created by the Indenture, this court would find that the Indenture did not create a legal relationship that would entitle Duncan-Williams to indemnity from U.S. Bank. The court notes "there is no right to indemnity or contribution between joint tortfeasors in Alabama." *SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.*, 939 So. 2d 885, 899 (Ala. Civ. App. 2005)(citing *Crigler v. Salac*, 438 So. 2d 1375 (Ala.1983); *Parker v. Mauldin*, 353 So. 2d 1375 (Ala.1977)). However, an exception is made for indemnity based on certain limited legal relationships.

> "Alabama law analyzes problems involving two putative tort-feasors involved in an indemnification dispute arising out of a personal injury cause of action in terms of active versus passive negligence. The seminal case is *Mallory S.S. Co. v. Druhan*, 17 Ala. App. 365, 84 So. 874 (1920)."

*Unicore, Inc. v. Tennessee Valley Auth.*, 768 F.2d 109, 112-113 (6th Cir. 1985)(applying Alabama law). The active-versus-passive-negligence analysis used in *Mallory Steamship Co. v. Druham*, 17 Ala. App. 365, 84 So. 874 (1920), is a well-established exception to the rule that joint tortfeasors may not claim indemnity against each other. The Alabama Supreme Court has indicated that the term "***passive negligence***" may be equivalent to "***vicarious liability***," "i.e., liability that the law imposes on one party for the wrongful conduct of another, as opposed to '***active negligence***,'" which "refer[s] to that form of liability based on one's own wrongful conduct." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 556 (Ala. 1994).

> "'The exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury. Where an

11

> injury results from a violation of a duty which one owes to another, the parties are not in pari delicto.
>
> "'... These exceptions to the general rule that no right of contribution or indemnity exists in favor of one joint tort-feasor against another are recognized in Alabama . . . .'
>
> "[*Mallory S.S.*,] 17 Ala. App. 365, 84 So. at 877-78.
>
> "The *Mallory S.S.* case has been frequently cited and never overruled."
>
> *Unicore, Inc. v. Tennessee Valley Auth.*, 768 F.2d at 112-113. *See also Coates v. CTB, Inc.*, 173 F. Supp.2d 1200, 1203 (M.D. Ala. 2001); and *Walter L. Couse & Co. v. Hardy Corp.*, 49 Ala. App. 552, 557, 274 So. 2d 316, 320 (Civ. App. 1972), *cert. denied*, 290 Ala. 134, 274 So. 2d 322 (1973).

*SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.* 939 So. 2d 885, 902-03 (Ala. Civ. App. 2005). Nothing in the Indenture creates a legal relationship between Duncan-Williams and U.S. Bank whereby U.S. Bank is vicariously liable for the acts of Duncan-Williams.

Therefore, U.S. Bank is entitled to judgment as a matter of law as to Duncan-Williams's claim for indemnity based on its legal relationship with U.S. Bank, and such claim is due to dismissed.

### 3. Tennessee Common Law

Plaintiff has failed to demonstrate that Tennessee's common law of indemnity has any application under the facts before the court. Therefore, U.S. Bank is entitled to judgment as a matter of law as to Duncan-Williams's claim of indemnity based on Tennessee common law, and such claim will be dismissed.

## B. CONTRIBUTION

In Alabama –

> It is well settled that the traditional conflict rule of lex loci delicti applies to tort actions brought in this jurisdiction. *Bodnar v. Piper Aircraft Corp.*, 392 So. 2d 1161 (Ala.1981). Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred. *Mullins v. Alabama Great Southern R.R. Co.*, 239 Ala. 608, 195 So. 866 (1940); *Dawson v. Dawson*, 224 Ala. 13, 138 So. 414 (1931); *Alabama Great Southern R.R. Co. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892).

*Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984).

The facts seem clear that Duncan-Williams's "injury" with regard to the *Vest* case occurred in Tennessee. Therefore, Tennessee law applies to Duncan-Williams's contribution claim arising from the *Vest* case. For purposes of the *Jones* case, the court finds Duncan-Williams's injury occurred in Alabama, the place of the *Jones* lawsuit. Therefore, the court will apply Alabama law to Duncan-Williams's contribution claim arising from the *Jones* case.

"[T]here is no right to indemnity or contribution between joint tortfeasors in Alabama." *Jones, Morrison, Womack & Dearing*, 939 So. 2d at 899. "Some exceptions to this rule exist, allowing a joint tort-feasor ***indemnity***, but not ***contribution***." *First Real Estate Corp. of Alabama v. Winters*, 551 So. 2d 417, 419 (Ala. Civ. App. 1989)(citing *Gobble v. Bradford*, 147 So. 619 (1933); *Mallory S.S. Co. v. Druhan*, 84 So. 874 (1920))(emphasis added). Jones's claims were based on fraud; therefore, the court finds that

13

Duncan-Williams and U.S. Bank are alleged joint tortfeasors. Duncan-Williams's claim for contribution based on its settlement of the *Jones* case is due to be dismissed.[2]

Duncan-Williams's Amended Complaint alleges that it is entitled to contribution from U.S. Bank based on the Uniform Contribution Among Tort-feasors Act, and it cites to "Tennessee Code Annotated § 29-11-101, *et seq*." (*See* doc. 7 at 24 and ¶ 100.) Section 29-11-102(d) of the Tennessee Code states:

> A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

Tenn. Code Ann. § 29-11-102(d). Duncan-Williams does not allege that its settlement of the *Vest* case "extinguished" U.S. Bank's liability to Vest and IP.[3] Failure to allege and prove that the settlement extinguished Vest and IP's claims against U.S. Bank is fatal to Duncan-Williams's claim for contribution under Tennessee's Uniform Contribution Among Tort-feasors Act.

Therefore, plaintiff's claim for contribution based on the settlement of the *Vest* case is due to be dismissed.

---

[2]Because U.S. Bank and Duncan-Williams are allegedly joint tortfeasors, U.S. Bank, if found liable to Jones, may be entitled to an off-set of the amount Duncan-Williams paid in settlement.

[3]The evidence before the court shows that the jury in *Vest* found that U.S. Bank was not liable for loss incurred by Vest and/or IP. However, as Duncan-Williams argues, this finding is not binding on this court as it was not reduced to a judgment. (*See* doc. 8 at 14-21.)

**CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant U.S. Bank is entitled to judgment as a matter of law. An Order denying defendant's Motion to Dismiss/Motion for Summary Judgment, (doc. 3), and granting its Motion to Dismiss Amended Complaint/Motion for Summary Judgment, (doc. 10), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 4th day of January, 2010.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE